NATHANIEL STEVENS & another vs. BOSTON AND MAINE RAIL-
ROAD.

A consignee of goods arriving by railroad sent to the depot of the railroad corporation a teamster, who knew the place to which the goods were to go, but did not know the marks of the bales: The teamster demanded the goods of the freight agent of the corporation, who, after a superficial examination, said that the goods had already been delivered, and were not there: The teamster pointed out some bales, and asked if those were not the goods, as in fact they were: The freight agent turned over one of the bales so as to exhibit the marks, and said those were not the goods, but came from another place: And the teamster went away without the goods. Held, that the agent of the railroad corporation was guilty of negligence in not delivering the goods; and the goods being destroyed by accidental fire during the following night, that the corporation were responsible for their value.

THIS action was brought to recover the value of twelve bales of flannel, delivered by the plaintiffs to the defendants at Andover, to be carried over their railroad to Boston. Writ dated October 27th 1851. The declaration contained two counts; one in contract, and one in tort, as allowed by the practice act, St. 1851, c. 233, § 2, cl. 5, the plaintiffs averring that they were in doubt whether their cause of action should be sued in contract or in tort, and that the two counts were for the same cause of action. The case was tried before Bigelow, J. without any question as to the form of the pleadings. The plaintiffs contended that the defendants had so conducted themselves, with regard to the goods, that they were responsible, either as common carriers for not performing their agreement, or as warehousemen for negligence as to the custody and delivery of the goods.

The evidence tended to prove the following facts: The defendants received the goods at their station at South Andover, on Saturday, the 2d of November 1850, to be transported to Boston; and gave no receipt or bill of lading for them, as it is not their custom to give any at that station. The way-bill, sent with the goods from the South Andover Station to the defendants in Boston, and to which the freight agents at the Boston depot had access, was in these words: "November 2d 1850. Nathaniel Stevens & Son, 12 bales domestics, Marsh & Crosby." On the same day the plaintiffs addressed a letter to Marsh & Crosby,

truckmen in Boston, informing them that twelve bales of flannel had been forwarded to their care, eleven marked " S. S. & F., Philadelphia," to go to the Fall River Railroad Depot, and one to Henry Poor, Kilby Street, Boston. The goods arrived on Saturday, and were safely unladen by Peabody, the delivery agent of the defendants, and placed in the defendants' depot, in a particular position, from which they were afterwards moved a few feet by another freight agent of the defendants, without Peabody's knowledge, for his own convenience in arranging outward freight. On Monday following, George, a teamster, by the direction of Marsh & Crosby, went to the depot with a team, and having paid the freight at the office, and taken a receipt, asked Peabody for the twelve bales of flannel from Stevens & Son; Peabody directed him to a particular door, at which he placed his team, and there met Peabody. Peabody was in a hurry, and, after a slight and superficial examination, told George that the goods of Stevens & Son had already been delivered to some other truckman, and that they were not there. George pointed to twelve bales of flannel, which were laid by the side of other bales, but not mixed with them, and asked Peabody if they were not the goods of Stevens & Son. Peabody turned over one of the bales marked " S. S. & F., Philadelphia; " and said they were not the goods inquired for, but came from North Andover; whereupon George, who testified that he knew that eleven of the bales for which he was sent were to be directed to Philadelphia, but that he did not know what their other marks were to be, went away without the goods. These twelve bales were, in fact, the goods sought for. Twelve bales of flannel, of the same size, came from North Andover on the same day as the goods in question, to a different consignee. Peabody discovered his mistake ten or fifteen minutes after George went away, but sent no message to Marsh & Crosby to correct it. The goods, not being taken away that afternoon, were burnt during the night following.

A verdict was taken by consent for the plaintiffs for the whole value of the goods; and the case was reserved upon the report of the presiding judge, for the consideration of the full court,

with the agreement that if, upon the facts reported, the court should be of opinion that a verdict for the plaintiffs could not be sustained, the verdict should be set aside; but if the plaintiffs were entitled to nominal damages only, the verdict should be amended accordingly.

This case was argued before the decision of the case of the Norway Plains Company against the same defendants, *ante*, 263.

*H F. Durant & O. Stevens*, for the plaintiffs. The defendants are responsible for the value of the goods destroyed, either as common carriers, or as warehousemen. 1. As common carriers, their duty was to transport the goods safely, to deposit them in a suitable place, to give notice to the plaintiffs of their arrival and readiness for delivery, to keep them separate from other goods a reasonable time for removal, and to deliver them to the owner when requested. And until all these duties were performed, the defendants were liable for a loss by fire. *Thomas* v. *Boston & Providence Railroad*, 10 Met. 472. 2 Kent Com. (6th ed.) 605, *& notes*. Angell on Carriers, §§ 313, 315. Story on Bailm. §§ 542–546. *Gatliffe* v. *Bourne*, 4 Bing. N. C. 314, and 3 Man. & Gr. 690. *McHenry* v. *Philadelphia, Wilmington & Baltimore Railroad*, 4 Harring. 448. *Hill* v. *Humphreys*, 5 W. & S. 123. *Eagle* v. *White*, 6 Whart. 505. *Miller* v. *Steam Navigation Co.* 13 Barb. 363. 2. As warehousemen, the defendants were bound to keep the goods in a suitable place, separate from the goods of other persons, and to deliver them to the plaintiffs when requested. Angell on Carriers, §§ 45, 46, 47, 75. Story on Bailm. §§ 442, 444, 450, 545. *Brind* v. *Dale*, 8 Car. & P. 211. *Willard* v. *Bridge*, 4 Barb. 361. *Garnett* v. *Willan*, 5 B. & Ald. 58. The defendants were bound to have an agent to point out the right goods, and to see to their delivery; and for the negligence and mistake of their agent, they are responsible. 3. The defendants are liable for the whole value of the goods, inasmuch as they would have been obtained by the plaintiffs, but for the negligence of the defendants' agents. *Ellis* v. *Turner*, 8 T. R. 531. *Davis* v. *Garrett*, 4 Moore & Payne, 540, and 6 Bing. 716. *Powers* v. *Davenport*, 7 Blackf. 497. *Boyle* v. *M'Laughlin*, 4 Har. & Johns. 291. *Willard* v *Bridge*, 4 Barb. 368.

*R. Choate & G. Minot*, for the defendants. The defendants on Saturday, the day of the arrival of the goods, ceased to be common carriers, and became warehousemen. Angell on Carriers, §§ 301, 302, 304, 313. They were then bound only to use ordinary care and diligence in keeping the goods safely; not to convert them; to give them up when specifically demanded; and to allow the owner to come, to look at and identify his goods, and take them away. No conversion of the goods is shown. Angell on Carriers, §§ 431–433. *Cobb* v. *Dows*, 9 Barb. 242, 243. *Liptrot* v. *Holmes*, 1 Kelly, 391. *Heald* v. *Carey*, 9 Eng. Law & Eq. R. 429, and 11 C. B. 977. Nor any breach of duty on the part of the defendants. *Swigert* v. *Graham*, 7 B. Monr. 661. The whole duty of the defendants was discharged, when the plaintiffs' agent saw the goods separate from others, and the marks thereon, and made no demand for them specifically. *Cope* v. *Cordova*, 1 Rawle, 203. Peabody was not guilty of negligence; he only made an inaccurate inference from the evidence before him. But if there was any negligence on his part, there was concurrent negligence on the part of the consignees; and therefore the plaintiffs cannot recover. The consignees should either have come for the goods themselves, or have sent a person who knew the marks. The defendants, by not delivering the goods, did no more than keep up the relation of warehousemen. The loss by fire is not so direct a consequence of the failure to deliver, as to make the defendants responsible for the value of the goods. Sedgw. on Damages, *c.* 3. *Fox* v. *Harding*, 7 Cush. 516. *Thompson* v. *Shattuck*, 2 Met. 615. *Hayden* v. *Cabot*, 17 Mass. 169. *Dorwin* v. *Potter*, 5 Denio, 306. *Anthony* v. *Slaid*, 11 Met. 290. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Smith* v. *Condry*, 1 How. 35. *Crain* v. *Petrie*, 6 Hill, 522. *Loker* v. *Damon*, 17 Pick. 284. *Archer* v. *Williams*, 2 Car. & Kirw. 26, 5 C. B. 318, and 5 Railw. Cas. 289.

SHAW, C. J. This action is similar to that brought by the Norway Plains Company against the same defendants, *ante*, 263, and is brought to recover the value of twelve bales of flannel destroyed by the same fire.

A question arose on the evidence, whether there was not a mu-

tual mistake, as well on the part of the plaintiffs, by their agent George, as on that of the defendants, by their agent Peabody, so that they were equally in fault in not discovering that the parcel, of which one was examined, were the goods of the plaintiffs. But George expressly testifies that, although he knew that the bulk of the goods were to be directed to Philadelphia, yet he did not know the mark " S. S. F." and therefore had no reason to believe that these were the plaintiffs' goods, when Peabody said they were not, and that these goods came from North Andover, Stevens & Son's having come from South Andover; whereas Peabody had, or ought to have had, the means of know ing that these were Stevens & Son's goods.

The defendants were bound to make a right and true delivery of the goods, when the freight was paid, and they were duly demanded, and were responsible for the conduct of their agent employed for that purpose. Upon the evidence, we are of opinion, that Peabody, the delivery agent, in declaring that the goods were not there, but had been delivered, and that the goods which were there came from another place, which was not true, in failing to examine the marks of the goods by the way-bill, and generally in the hurried and superficial manner in which he examined these goods, when a slight degree of care and attention would have discovered the truth, was chargeable with negligence in the delivery of the goods, for which the corporation are responsible.

A question was raised in the argument, whether, were this an action of trover, the evidence reported would have been sufficient to prove a conversion. This action being brought under the new practice act, in which the distinction in the form of actions is, to a great extent, abolished, the question is in no other sense material, except that it might bring the case within the operation of a well known rule of evidence, that the value of the property, at the time of the conversion, is the measure of damages in trover. But whether, strictly considered, the evidence reported would have been proof of conversion in trover, or not, we think that, as the negligence of the agent of the corporation in this case prevented the plaintiffs from getting their

24 *

goods into their own possession on Monday afternoon, by means whereof they remained in the depot and were burnt, the loss was so directly the consequence of this default on the part of the corporation, that the value of the goods, in either aspect, is the just rule of damages.  *Judgment on the verdict.*